case, which is the United States v. Nahmani. Good morning, Your Honor. Good morning. Richard Kluh and Alan Dershowitz for Ronen Nahmani. This case presents the court with an opportunity to correct several significant errors that led to the conviction and sentence of 20 years imprisonment for conduct that we feel the prosecution presented the greatest possible risk of convicting the defendant for conduct that was not unlawful at the time that it was committed. The government presented the case, tried to present the case as a drug case, but the way they presented it as a drug case was to call a person in another case who was prosecuted at a time other than his dealings with this defendant. And that was the only witness. You're talking about Hurley? Hurley, Kyle Hurley. And this focus on Hurley and the blurring of the legal and illegal and the constructive amendment of the indictment and the prejudice that comes out from the use of every aspect of Hurley's conviction in order to substantively prove elements of the government's case, as the government points out in its brief, identity of the substance as well as the existence of a conspiracy, the practices of the conspirators. And then when we get to the instructions and we see that they do not ultimately comport with McFadden, they lack a unanimity instruction and they contain instruction by the judge that says the drug that Hurley was dealing with was illegal without a reference to time. This combination, and in combination with the indictment that was also defective, produces a tremendous likelihood that in this one count conspiracy prosecution the jury found the one conspiracy that the government proved unfortunately it was a conspiracy not to do something illegal at the time. And it was uncharged. And it was proved by extremely prejudicial hearsay means. There were other, beyond the novelty of the government's approach with regard to the indictment, which there is no precedent for in this circuit and as far as I can see no other circuit, there was a novelty in the overwhelming use of completely unreliable and speculative evidence of harms that may or may not occur from the type of crime at issue. I thought of an analogy if I were trying a fraud case and the government started to introduce how many people committed suicide in the Great Depression because of some frauds that occurred. The court would immediately reverse saying it has nothing to do with it. But that again was what the government did in this case. Gratuitously for no reason without indiscriminately with regard to products and without any hard evidence. Simply pure hearsay reports. The types of reports that this court, had they been introduced directly, would have said is a Crawford violation. Where did that evidence come from? From Dr. Trekkie or somebody else? Principally from Dr. Trekkie. Yes, he would say I've read reports about autopsy reports. And then he would use this generic term. Why couldn't an expert do that? Or at least put it more sharply, why couldn't a district court without abusing his discretion permit him to do it and leave him subject to confrontation and cross-examination? The question of relevance is perhaps closer than the question of prejudice. In the context of this case, in the context of all of the other variations from the norm, variations from justice, variations from a fair trial, to overwhelm a jury with pure speculation. Because Trekkie did not know what happened. The reports do not say what happened. And they don't have to do with the issue at hand. I thought the objection was the opinion he was proffering was unreliable. The foundation was insufficient because as an expert he was relying on a series of hearsay reports. And my question to you is why couldn't he do that if an expert in this field would normally rely on that kind of information hearsay or not? Experts rely on hearsay all the time. There are several reasons. I tried to address them in my brief, but I think the most important one that I didn't cover adequately in the brief is that the statute is not about this type of harm. In other words, this is not a case where you have to prove where they had a burden to put on an expert to say these drugs are dangerous. Or any drug if overdosed, or any substance if overdosed. Obviously, if somebody takes too much aspirin, they can have a problem. That's not what the statute is about. That's not what the substantive issue is about. But again, they confounded the issue. The issue is what psychotropic effects does it have? What hallucinogenic? They have to show some way that that's included in these illegal substances when it's not listed, right? Yes, they have to show that it has the same effect. And what they did is they showed it had a different effect. Because has anyone heard of somebody overdosing on marijuana? Which they're trying to compare it to? No. So they put on a case that has nothing to do with trying to prove the point. They have it put on a case which is completely speculative and off the mark. Because we have no idea whether the substances at issue there were in any way the combination or the exact nature of them matched exactly these. Because again, they were mushing together the concept of bad drug. Let me ask you something just going to the beginning. When I read your brief, the first argument you made, if I have that right, was that the indictment itself was defective because it failed to properly invoke federal jurisdiction insofar as it did not identify with specificity the drug that was the object of the conspiracy. If I have that right. Again, as the government... That's one of your arguments. I think the government has corrected me in their brief by saying it did not identify any controlled... So it would be enough to say it was a controlled substance to track the language of the statute and be facially sufficient, right? There is not a single case that holds that. In fact, every case... Do you think if it simply refers to a controlled substance, that's insufficient? I believe it's completely insufficient. As a fallback position, we also preserve the fallback position that if you were to say that, then all the statute does is invoke the least penalty possible under the Apprendi Booker... The reason I raise it, I think there's an Apprendi issue that you've got there, but that's a slightly different argument than that the pleading, the allegation was insufficient. Because I never thought that the drug type was considered an element of a generic violation of 841. Am I right or wrong about that? I contend that you're wrong. I don't believe the government's ever tried it before, so to that extent I've had trouble finding cases saying it's wrong, but I find language in every case of this circuit saying that you have to say what the drug is. You have to say... We have a case, US v. Sanders, where we concluded where the indictment charged a conspiracy to possess with intent to control substance. Do we have to allege with specificity in the matter that the controlled substance was X, Y, or Z, or is it enough to establish that it was a controlled substance? In Sanders, actually, there was in the indictment... Right. I'm asking, do you have to actually enumerate the nature of the controlled substance, and if so, why is that the case? Well, there's the non-jurisdictional reason of fundamental due process notice, of course, which is a pretty fundamental reason, and we didn't realize how important... No, no, I understand that. That's not what my question is going to. The jurisdictional reason is, if I can do it by analogy, if the government charged a conspiracy to murder, but they didn't say to murder a person, to murder a human being, and it turns out that they're really charging a conspiracy to murder a sandwich. That's the problem. You have to say the things in the charge that bring it within, and that's what Russell says, and that's what Hamling says, that when you get to a point of you can't just say, this is at the level where the government said, these people did something wrong under Title 21. You're supposed to bring this pre-trial, right, and it wasn't brought that way. As to the due process notice part, we are supposed to, although this court's precedent in Speraza, I think, allows us to raise it even if we didn't do that. Moreover, because of the way this case was mistried, as well as misinstructed, and because of the way it diverted on a constructive amendment to this other substance that was legal at the time, I don't think anyone in the trial realized where this train was headed, how it was going to crash. I think that excuses that, but I think it is jurisdictional, and I do not want to come back to that, because that's what the case law says. Some cases you can say if you conspire to jaywalk on this street, that's fine, but there's some statutes that you cannot simply say it states jurisdiction. Let me sharpen the question a little bit. Let's assume for purposes of my question you accept that as a matter of jurisdiction you lose, that it was enough that they tracked adequately the statute. I think the heart of your argument on this point is that there is an apprendi violation, a non-jurisdictional one based on a challenge to the indictment failing to allege the drug type or amount, but it's basically an apprendi argument. Insofar as you make an apprendi argument in this case because it didn't specify the drug type or cite specifically the 841B the indictment does list specifically the names of Schedule I controlled substances and controlled substance analogs that were involved, quote unquote, in the conspiracy. Why isn't that enough? We think that's actually a separate and additional jurisdictional violation, Your Honor, because what it did was... Let's forget the label you placed on it. It tells the jury under a standard that doesn't even meet Pinkerton, a standard that doesn't even hold up, I think, for sentencing purposes, but certainly not under conspiracy law, to tell them it's okay to go there. And that, we think, is the icing on the cake of the problems with this indictment. We did make the alternative argument of the apprendi issue. This is a case where we don't even know what substances the jury was focusing on because the court rejected the request for a specificity unanimity instruction, which was so important in this case, a specificity weight unanimity instruction. We know that the court confused the McFadden instruction in the initial instructions. The jury came back asking for some further instructions and then further confused it over multiple defense objections at the end. And this was the fear expressed before the case goes to the jury by defense counsel. We're not going to know where the jury is going here. And we still don't. We don't know where they're going in terms of who had mens rea, who didn't have mens rea. We don't know where they're going in terms of legality, illegality of the product because the instructions misdirected the jury in that. So we have great problems. Of course, this carried over to sentencing. And there are multiple issues with sentencing. Almost all of the weight is attributed to these Hurley transactions that were legal. Almost all of it. Was there not some evidence that went beyond and was distinct from him? There was evidence. It didn't match up to the 161 to 1 ratio of all but a small quantity, 40, I would say 40 kilograms. And the other connections to other people in the case, for example, they tried to bring in another person as being involved. This person is found with 5 grams of something having nothing to do with any transaction. 5 grams is a person. And it's not even in connection with any transaction. 5 grams, and that is again one of the problems we have. Other than the 40 grams that they attribute to the possession, assuming there were a conspiracy, you really can't justify the rest of it. Certainly not under the 167 to 1 ratio. Thanks very much. You have reserved 3 minutes for rebuttal. Good morning. Good morning. May it please the Court. I'm Jonathan Colon on behalf of the United States. With me at Council Tables, Martin Guyers, who is one of the trial prosecutors in this case. Mr. Colon, let me ask you a question at the outset. Did the defendant really know what he was being charged with here? Could you fairly tell what the essence of the charge was? Yes, Your Honor. The four corners of the charging instrument. Yes, Your Honor. As you pointed out, although the charging language itself is tracking the statute of a generic drug conspiracy, addressing both controlled substances and controlled substance analogs as those of the three controlled substances and controlled substance analogs. I want to start by saying that Where did that come from? Excuse me? The listing of the controlled substances. Were they in the indictment itself? They were listed in the indictment. It was part of the language giving notice as to which of the drugs he was going to be held responsible. Cite it to us specifically and what it says. The controlled substances involved in the conspiracy attributable to the defendant as a result of his own conduct and the conduct of other conspirators reasonably foreseeable to him include Schedule I controlled substances, that is, AB Fubinaca, PB 22, and XLR11, violation of Title 21 United States Code, Section 841A1. The controlled substance analogs involved in the conspiracy attributable to the defendant as a result of his own conduct and the conduct of other conspirators reasonably foreseeable to him include THJ 2201, 5-chlorour144, and 5-bromour144, which are analogs of Schedule I controlled substances in violation of Title 21 United States Code, Section 841A1, 802, 32A, and 813. This case was not limited to one drug. This was not limited to legal drugs or drugs that there was any ambiguity about whether he was possessing. He was found in his car, in his storage unit, in his home to have each of those three listed controlled substances that he was informed about in the indictment, each of those three controlled substance analogs. He identified them by name in negotiations with his Chinese suppliers in the emails introduced at trial. He identified both a controlled substance and a controlled substance analog. He identified A.B. Fubinaca in his negotiations with Hurley on a date after A.B. Fubinaca became a controlled unlisted substance in the days leading up to the conspiracy that was charged to begin on or about April 1st. Was he peddling these things while they were still legal and then they became illegal and then he peddled them some more? The only one that there was any issue about that is A.B. Fubinaca. I want to say that starting this is a jury was instructed that he had to have an unlawful plan to distribute, to possess with intent to distribute controlled substances and controlled substance analogs. So whether he was actually found in possession of any one is not at issue in this case. The point was the jury had to find he had a plan to do so. The only one that became a listed controlled substance during the events described to the jury was A.B. Fubinaca. Evidence showed that that became a listed controlled substance. I want to point out before that doesn't mean it was legal. It wasn't part of the case because it was earlier on but just for accuracy's sake I want the court to understand that before these new substances, these new synthetics can become listed as controlled they are often deemed as analogs. So I don't want to suggest that A.B. Fubinaca was perfectly legal before that date but the evidence showed that in February of 2014 A.B. Fubinaca became a listed controlled substance. Let me ask the question this way. Assume with me that the charge included multiple controlled substances. Some of which, at least one of which was not unlawful until a later period in time but there are others, the bulk of which are. The case goes to the jury. Was the jury asked specifically to find a specific controlled substance or was it simply a general verdict and if the answer was the latter and it is, then can we tell whether they found him guilty for something that wasn't a crime? Or have I misapprehended? There are a lot of parts there. I want to make sure I get them in order. Two critical parts are what they charge and did it include among the list some drugs that were not unlawful or may have become unlawful at a later point in time. If the jury doesn't tell us what they found, maybe three of them went off on something that wasn't unlawful and nine went off on something else. Do you have a problem there? Did you need unanimity is really what I guess I'm asking. Specificity in the instruction and the finding and unanimity in the finding by a jury. The direct answer is we do not need unanimity as to which drug he possessed and let me explain why. It happens in this case that there were no drugs that were legal at the time of the charge conspiracy at the time that we have proved that Mr. Nomani possessed them and was distributing them. None of them were legal at the time of the charge conspiracy or at the time we proved he possessed them, was aware of their identity, and was engaged with others to possess with intent to distribute them. He was in possession of them while they were illegal. AB Fubinaca is the only one that we're talking about here. There were two other listed controlled substances. There is no evidence or even suggestion that they were legal. In fact, there was evidence that they were illegal prior to the date of the charge conspiracy. AB Fubinaca became a listed controlled substance, not even an analog, but a listed controlled substance in February of 2014. Mr. Nomani's negotiations with Hurley as to continue to transact on AB Fubinaca by name continued to March 28th of 2014 in the days leading up to the charge conspiracy which began on or about April 1st. After the beginning of the charge conspiracy, Mr. Nomani is found to be in possession of AB Fubinaca and the other two listed controlled substances that were never at any point legal or unlisted. He identified AB Fubinaca by name in his emails with the Chinese suppliers at a time... You said they were never legal. Were they all denominated as illegal control one substances at the relevant time frame? Of the three listed controlled substances, yes. AB Fubinaca, there were some evidence that dealt with the time before it became a listed controlled substance, prior to February of 2014. But the evidence also included Nomani's identification of that substance by name, which is important for McFadden purposes. It shows that is sufficient mens rea to identify your controlled substance by name. It became a charge conspiracy on or about April 1st. It was a listed controlled substance while he was found in possession of it at the various locations. It was a listed controlled substance while he was identifying it and transacting in regards to it in the emails with his Chinese suppliers by name. The jury was properly instructed under McFadden that when you have a multiple object conspiracy, you can find any one of the controlled substances because this is a conspiracy case. He didn't have to possess any of them. He had to have an unlawful plan to possess and to distribute controlled substances. What's the quantity of these drugs of material fact in this case? For sentencing purposes, not for charging purposes. Not for charging purposes is what I mean. No. Clay is very clear. This court's decision in Clay is clear that drug type and drug amount do not have to be charged and proved to a jury so long as there is no apprendi issue. When it came up at sentencing and Mr. Nomani asked for a special verdict finding on the drug amount, he conceded that there was no apprendi issue because he was not being subjected to a statutory mandatory minimum sentence. He was being subjected to the 0 to 20 range under 841 B1C, which is what you are liable to when there is no specific allegation as to drug type or amount. That is a generic conspiracy charge and a generic conspiracy statutory sentence. So there is no apprendi issue in this case. If there were, then we would have an issue about charging drug amounts but there was no apprendi issue in this case. As Mr. Nomani conceded at the time that he requested the special verdict finding on drug amount, what the verdict form did require the jury to find unanimously, it says in the verdict form and it said in the instructions was that he conspired to possess with intent to distribute controlled substances and that he conspired to possess with intent to distribute controlled substance analogs. If I can address Mr. Trekkies Dr. Trekkies, the expert testimony here, the reports about health effects, first of all are part of what the statute requires. The specific information about the harmful effects, the specific information about deaths were specifically responding to Dr. Buffington, the defense experts, questioning of the basis of Dr. Trekkies conclusions. Dr. Trekkies went through and explained the various ways you can look at the drug health effects on the central nervous system through structural activity relationships, which is sort of a chemical molecular analysis, through in vitro tests, which can show some chemical in the lab responses, and then animal in vivo tests in the absence of human trials. Dr. Buffington questioned whether that would be reliable information to make any conclusions as to the effect on the human central nervous system. He says there's no human data. Well, the government was entitled to have Dr. Trekkies say, well, first of all, we questioned Dr. Buffington, and to have Dr. Trekkies say, but Dr. Trekkies listed all the sources of data that he has, studies, reports, from the National Institute of Health, which he called the gold standard in these newly evolving drugs. There isn't a backlog of data because they're changing all the time. And he said there are no human trials for these drugs because they are dangerous, because they can kill you. And that's my words, I'm sorry, I don't want to put them into his mouth. But when he listed the dangerous health effects and the very serious health effects, or when the prosecutors questioned Dr. Buffington and referred to the reports from hospitals or deaths caused by these drugs, that shows and helps explain both to the trial judge who made the proper Daubert findings prior to trial and did not as abuse his discretion in finding this testimony admissible, or when it was presented and argued to the jury why you don't have human trials for these newly evolving and dangerous drugs because they're dangerous. And that is why Dr. Trekkies explained it is perfectly within the standard of the Drug Administration and the National Institute of Health to rely on this type of information from animal studies, from other reports. But when Dr. Buffington asserted there's no human data, the government was entitled to point out well, but there are these reports from people in hospitals, or deaths, and that is why we don't have human data. Although that itself is human data, as was pointed out. Are you familiar with the United States v. Stockton decision from the District Court in New Mexico in which the Court held that Dr. Trekkies' opinions were unreliable, his methodology was unreliable? I'm sorry, Your Honor, I'm not. I would be happy to address it if you would like in a letter to the Court following. I will point out that we have cited in our brief several other decisions, including two District Court decisions, I believe it was Bays and Roulette, where Dr. Trekkies under a Daubert standard was found admissible for trial purposes. I submitted to the Court two cases that were for sentencing purposes, so it was not exactly a Daubert analysis, but nevertheless for the issue of the drug ratio, which is also an issue in this case where his conclusions and methods were found to be reliable and under the abuse of discretion standard, I believe this Court should find that the District Court's Daubert hearing in this case was extensive. Both Dr. Trekkie and Dr. Buffington had a fair opportunity to present their analysis and why they thought the methods were or were not sufficient to reach their expert conclusions and the District Court made findings in regards to under Daubert for its admissibility and I believe that that was not an abuse of discretion in this case. Since the ratio was brought up, I just wanted to point out that it's important to note in this case for sentencing purposes, because Mr. Nomani received the statutory maximum sentence lower than what his guideline sentence would have been because he had maxed out on the guidelines, this Court would have to find in his favor on multiple sentencing grounds. In fact, you could do without the Hurley evidence entirely as to the drug amount. I did the math, I did my best for the multivariable algebra, and as far as I can determine, even without Hurley's drug amounts, not just the final product mixed amount, but the raw product itself, I believe, if you were only to find that Hurley's drug amounts were inadmissible in their entirety, it would still not be enough to reduce the offense level by six points to bring it under the statutory maximum sentence. So if the Court were troubled by Hurley's evidence, at least as to the sentencing aspect of it for drug amounts, because there was a period of time where A.B. Fubinaca was not a listed controlled substance. And what theory does Hurley's testimony come in? Is it 404B? Is it something that's intrinsic? It was intrinsic, Your Honor. Tell me why it's intrinsic to the charged conspiracy. Okay. First of all, as I said, they were continuing to negotiate transactions in A.B. Fubinaca up to and including March 28, which is days before the beginning of the charged conspiracy on or about April 1. It established the identity of the A.B. Fubinaca, which Mr. Nomani tried to question the findings of the testing of the DEA labs because Mr. Nomani himself identified it to Hurley as A.B. Fubinaca. It helped establish Mr. Nomani's business methods, and it's his knowledge that he was dealing in criminal activities because the elaborate clandestine nature of his business, sending his brother, one of his conspirators, up to conduct $100,000 cash transaction in parking lots. That is someone who has knowledge that what he is doing needs to be concealed and is not an above board perfectly legal transaction. That is why it was inextricably intertwined to show his business, his knowledge of the chemical, because under McFadden, simply knowing the identity of the chemical can establish mens rea. And it shows through his dealing in controlled or illegal substances. The Court has no other questions on the other issues. We think that the evidence in this case was abundant on each of the three controlled substances and controlled substance analogs, and the sentence was properly calculated, and Mr. Nomani's sentence and conviction should be affirmed. Thank you, sir. Mr. Clue, you have reserved three minutes for rebuttal. Thank you, Your Honor. That's not a complete answer to the Hurley problem because, again, there's no limiting instruction. There's no everything that comes in, which is almost all hearsay, and is either the part that's not hearsay is what I did with Ronan Nachmany was legal. Why wasn't it intrinsic to the conspiracy, what Hurley had to say, as opposed to being a prior crime wrong or act? We know it wasn't a prior crime. Do I want to know why it wasn't intrinsic? Because it wasn't illegal, and that's the whole point. That's a fundamental problem that just completely poisons their case. You can't make that the focal point of your entire case and then tell the jury over and over, and Fubunaka kills people, and Fubunaka kills people, and Fubunaka, and expect this jury to do anything other than what they did, which is read an instruction that doesn't distinguish between the dates of legality of Fubunaka that tells the jury Fubunaka's illegal. The instruction told the jury that. There's no limiting instruction. Any jury would have said, well, Mr. Hurley pled to the conspiracy. Mr. Hurley says there's a conspiracy on Fubunaka. The judge says Fubunaka's illegal. That's enough. We go from there. There's no way to get around it. You add into that. Did you ask for a limiting instruction on that? We could not ask for a limiting instruction. We asked to exclude it. We asked to exclude it as 404B. Then the government came back and said, oh, it's not 404B. Then we couldn't ask for a limiting instruction. I'm just trying to say I was anticipating that they would come up with some other argument for it, but it can't be. Lawful conduct offered to convince the jury that there's a conspiracy is fundamentally problematic. I know of no case that's permitted that. You say it should have been a limiting instruction. I would think you could have asked for it. If it were a 404B, that's true. They came up in their brief with the argument it was only introduced for a limiting purpose of identity of the drugs. If we had known that's what they were doing, which is an argument that comes up on appeal, we would have asked for a limiting instruction. That's not what the case was. They were permitted to do everything with Hurley. We objected over and over again throughout DE 170 and 171. This case turned into a Hurley prosecution. That's what it was. The notion that they now come before this court and say we're so quibbling about whether Fubinaka was legal. That shows they're virtually hinting to this court to find him guilty because maybe Fubinaka was illegal. If they can do it to this court, can you imagine what jurors who have never experienced anything like this would find? Of course they're going to convict him based on the one person who comes up, I conspired with him. They try to break it down into simplicity issues of well it's just this, it's just that. This is just a conspiracy charge. If they had wanted to charge him with possession of what he possessed in the storage locker, they wanted to go that route, then they would have had that opportunity to prove that he still intended to distribute what was in the storage locker, of which there was no particular evidence that he did. But they didn't. They charged it as a conspiracy and they failed on the mens rea, they failed on the other conspirators. They want to blame his brother for doing a transaction. That transaction was legal. They say oh it's a $100,000 transaction. It's a legal $100,000 transaction. And yet it's still being offered in the court of appeals to try to prejudice the defendant. This is an overwhelmingly prejudicial case. Every aspect, the depths are not logical to anything. You cannot say because we anticipate, the other fellow is going to say that as courts have also found, you can't say that because an animal has a reaction, that this drug is going to have a psychotropic effect on a human being. Because our expert is going to say the same thing. For them to come in with not just oh well we think it's too dangerous to do trials, that's fine. You think it's too dangerous to do trials, say that. But go over and over and over in anticipation of a defense case of this person died here and this person died here and this person died here and we can't possibly defend it, much less do we have the evidence for it. It's worse than if the autopsy reports came in, which was in this court's held as a Crawford violation. I think the clock's got you, so if you could bring your remarks to a conclusion. Your Honor, the indictment, the government appears to be taking a different position at oral argument than they did in the brief. In the brief they said that language about reasonably foreseeable. Wouldn't be the first time. It wouldn't be the first time, but they're wrong in either event because we argued it as if they were going to take this position in the initial brief and that language is inadequate. It makes the indictment worse. If that's what they're relying on, it creates both the unanimity problem that the court identified which exists, which is preserved. When you ask for an instruction on weight, you're asking for weight and identity substance. We'd ask the court to note that these issues are, although some of them are a first impression, the weight of the law on almost every single issue is strongly on our side. Thanks very much. Thank you, counsel, and we'll proceed with the next case.